UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRYAL JEROME CULLER,<br><br>Plaintiff,<br><br>v.<br><br>SAN QUENTIN MEDICAL SERVICE, et al.,<br><br>Defendants. | Case No. 13-cv-03871-KAW (PR)<br><br>**ORDER OF SERVICE AND PARTIAL DISMISSAL; DIRECTING DEFENDANTS TO FILE CONSENT OR DECLINATION TO MAGISTRATE JUDGE JURISDICTION** |

Plaintiff, a state prisoner incarcerated at San Quentin State Prison (SQSP), has filed a *pro se* civil rights action pursuant to 42 U.S.C. § 1983, alleging the violation of his constitutional rights by medical staff and officers at SQSP and medical staff at Kentfield Rehabilitation Hospital. Plaintiff has consented to the jurisdiction of the undersigned United States Magistrate Judge over this action. His motion for leave to proceed *in forma pauperis* is granted in a separate order.

## I. DISCUSSION

**A. Preliminary Review of Complaint**

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b)(1), (2). *Pro se* pleadings must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Liability may be imposed on an individual defendant under 42 U.S.C. § 1983 if the

1  plaintiff can show that the defendant's actions both actually and proximately caused the
2  deprivation of a federally protected right. *Lemire v. Cal. Dept. Corrections & Rehabilitation*, 756
3  F.3d 1062, 1074 (9th Cir. 2013); *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988); *Harris v. City*
4  *of Roseburg*, 664 F.2d 1121, 1125 (9th Cir. 1981). A person deprives another of a constitutional
5  right within the meaning of section 1983 if he does an affirmative act, participates in another's
6  affirmative act or omits to perform an act which he is legally required to do, that causes the
7  deprivation of which the plaintiff complains. *Leer*, 844 F.2d at 633. Under no circumstances is
8  there respondeat superior liability under section 1983. *Lemire*, 756 F.3d at 1074. Or, in layman's
9  terms, under no circumstances is there liability under section 1983 solely because one is
10 responsible for the actions or omissions of another. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.
11 1989); *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680-81 (9th Cir. 1984).
12 A supervisor may be liable under section 1983 upon a showing of (1) personal involvement in the
13 constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful
14 conduct and the constitutional violation. *Henry A. v. Willden*, 678 F.3d 991, 1003-04 (9th Cir.
15 2012) (citing *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)). It is insufficient for a plaintiff
16 only to allege that supervisors knew about the constitutional violation and that they generally
17 created policies and procedures that led to the violation, without alleging "a specific policy" or "a
18 specific event" instigated by them that led to the constitutional violations. *Hydrick v. Hunter*, 669
19 F.3d 937, 942 (9th Cir. 2012).

20 **B. Plaintiff's Claims**

21     **1. Events at San Quentin State Prison**

22     The following is a summary of the allegations in Plaintiff's complaint. On November 19,
23 2011, Plaintiff woke with severe pain in both legs and he noticed that his big toe had no color in it.
24 He felt extreme pain in the calf of both legs and the back of both legs felt as if they were on fire.
25 He had difficulty walking. Plaintiff hobbled to the Officer Station to declare, "man down," but
26 Defendant Sgt. Boise told the officer not to declare "man down" and that Plaintiff had to put in a
27 medical request to see a doctor. Because Plaintiff was in so much pain, he went to the medical
28 clinic and explained to the medical officer his symptoms. The officer declared, "man down," and

1    officers responded.  Defendant Officer Valle was instructed to wheel Plaintiff to the hospital.  At
2    the hospital, Plaintiff was explaining his symptoms to Defendant R.N. Peterson when Officer
3    Valle interrupted and said that when Plaintiff walked up to the desk he was not in any pain.  R.N.
4    Peterson examined Plaintiff, noted warmness in his left foot which indicated an infection, but said
5    that, because there was no doctor at the hospital, Plaintiff would have a follow-up visit in a few
6    days.

7    The following morning, the pain and cramps Plaintiff was experiencing became worse.
8    Sgt. Boise refused to call "man down."  On November 23, 2011, Plaintiff saw Defendant Dr. D.
9    Leighton who noted discoloration in Plaintiff's big toe and warmth in his foot.  She ordered a
10   blood test and told Plaintiff she would see him again in two weeks.  When Plaintiff asked her how
11   he should deal with the pain during this time, Dr. Leighton told him to "suck it up."

12   During the next few days, Plaintiff attempted to get help from Defendants Dr. David, Dr.
13   Jones and Dr. Leighton and all of them refused to help.  Dr. Leighton was especially critical in her
14   refusal.  With each passing day, R.N. Peterson became more hostile toward Plaintiff and
15   threatened to write him up.  By this time Plaintiff's toe had turned blue.  Supervising nurses
16   Defendants R.N. Ingrid Nelson, R.N. N. Gender and R.N. M. Mutha told correctional staff that
17   they would not respond to Plaintiff's calls of "man down."

18   On December 3, 2011, Plaintiff showed his foot, which was now black and blue, to Lt.
19   Krugger, who ordered that Plaintiff be taken to the hospital.  At the hospital, Dr. Jones looked at
20   Plaintiff's foot and proceeded to call for an outside ambulance.

21   In the hospital emergency room, doctors performed an angiogram which revealed that
22   Plaintiff had a blood clot on his left side.  The doctor stated that Plaintiff was lucky he came in at
23   that time or he could have died.

24   On December 5, 2011, Plaintiff was diagnosed with a necrosis[1] of the left toe and the
25   digital metatarsal region.  This did not improve and, eventually, Plaintiff's left big toe and forefoot

---

[1] Plaintiff states that he had "nerosis" of the left toe.  The Court assumes this is a misspelling and Plaintiff means "necrosis," which is a loss of blood to the bone, which may be caused by a blood clot.  http://arthritis.webmd.com/avascular necrosis (last visited Oct. 4, 2013).

3

1   were amputated. Plaintiff spent the next three weeks in the intensive care unit at Marin General
2   Hospital. He stayed there until January 6, 2013, when he was determined to be stable enough to
3   be transferred to Kentfield Rehabilitation Center (Kentfield).

4   Based on these allegations, Plaintiff alleges an Eighth Amendment claim of deliberate
5   indifference to his serious medical needs and a disability discrimination claim against the SQSP
6   Medical Service, the named SQSP doctors and nurses and Sgt. Boise and Officer Valle.

**2. Events at Kentfield Rehabilitation Center**

On January 19, 2012, while he was at Kentfield, Plaintiff noticed three medical problems: (1) the pain medications were no longer effective for his foot wound; (2) he had no ability to urinate; and (3) he had painful constipation and could not have a bowl movement. Dr. Collinsworth prescribed enemas three times a day, sparkling mineral water with each meal, and medication. He also took stool samples. On January 22, 2012, the symptoms remained unchanged. When Plaintiff saw Dr. Collinsworth that day, he said that Plaintiff might be getting addicted to morphine and was trying to manipulate medical staff to get more.

On January 24, 2012, the pain grew worse so that Plaintiff could not eat. Dr. Crenshaw filled in for Dr. Collinsworth for the next few days. He examined Plaintiff and told him that he would keep a close eye on him and tell the nurses to do the same. On January 26, 2012, Dr. Crenshaw examined Plaintiff and told him there was nothing he could do because it was close to the weekend and that Dr. Collinsworth would return on Monday. On January 27, 2012, Plaintiff noticed blood on the front and back of his pajamas. Still the nurses and medical staff did nothing.

On January 30, 2012, Dr. Lawrence Levey examined Plaintiff and immediately ordered a CT scan and X-ray. These tests revealed that Plaintiff had a partial bowel obstruction and urinary retention. Dr. Levey ordered a Foley balloon catheter to be placed in Plaintiff's bladder to relieve the built up fluid. That afternoon, Plaintiff was rushed to Marin General Hospital intensive care unit for observation and treatment.

Based on these allegations, Plaintiff asserts an Eighth Amendment claims for deliberate indifference to his serious medical needs and disability discrimination against Kentfield, Dr. Collinsworth and Dr. Crenshaw.

4

**3. Deliberate Indifference to Serious Medical Needs**

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds, WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A prison official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *McGuckin*, 974 F.2d at 1059. A prison official exhibits deliberate indifference when he knows of and disregards a substantial risk of serious harm to inmate health or safety. *Farmer*, 511 U.S. at 837.

Plaintiff's allegations that he had a blood clot and a bowel obstruction establish that he had serious medical needs. When construed liberally, Plaintiff's allegations state a cognizable Eighth Amendment claim for deliberate indifference to his serious medical needs by SQSP Defendants Dr. Leighton, R.N. Peterson and Sgt. Boise who knew or should have known that Plaintiff's symptoms were indications that he had a serious medical need that required immediate medical attention and that they either prevented Plaintiff from obtaining medical care or failed to treat Plaintiff's serious medical need and concomitant pain.

However, Plaintiff's allegations are insufficient to state a claim against Dr. David, Dr. Jones, R.N. Nelson, R.N. Gender, R.N. Mutha and Officer Valle because he mentions them only briefly in his complaint. Plaintiff makes no allegations against Dr. Aggarwal. Therefore, the claims against all of these Defendants are dismissed. Dismissal is with leave to amend for Plaintiff to add allegations that show these Defendants knew about Plaintiff's serious medical need and deliberately prevented Plaintiff from receiving medical care or failed to treat his serious medical need.

Plaintiff's allegations against Kentfield and Kentfield Drs. Collinsworth and Crenshaw fail to state an Eighth Amendment claim because private individuals and entities may not be sued

1  under § 1983. As discussed above, to state a claim under § 1983, the alleged violation must have
2  been committed by a person acting under the color of state law. *See West*, 487 U.S. at 48.
3  However, action taken by private individuals or organizations may be under color of state law "if,
4  though only if, there is such a close nexus between the State and the challenged action that
5  seemingly private behavior may be fairly treated as that of the State itself." *See Brentwood*
6  *Academy v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295-96 (2001). Therefore,
7  Plaintiff is given leave to amend to allege such a nexus between the State and the challenged
8  action of these Defendants.
9  Plaintiff's Eighth Amendment claim against the SQSP Medical Service and Kentfield fail for
10 another reason. As discussed above, under § 1983 there is no supervisory or vicarious liability.
11 The SQSP Medical Service and Kentfield may only be liable for the alleged unconstitutional acts
12 committed by their employees if Plaintiff can allege a specific policy or a specific event instigated
13 by them that led to the constitutional violations. Plaintiff is given leave to amend to add such
14 allegations, if he truthfully can do so.

### 4. Disability Discrimination Claim

Plaintiff alleges that Defendants discriminated against him on the basis of his disability.

Title II of the Americans with Disabilities Act, 42 U.S.C.§ 12101 *et seq.* (ADA), and § 504 of the Rehabilitation Act of 1973, as amended and codified in 29 U.S.C. § 794(a) (RA), prohibit discrimination on the basis of disability in the programs, services or activities of a public entity. The elements of a cause of action under Title II of the ADA are: (1) that the plaintiff is a qualified individual with a disability; (2) that the plaintiff was either excluded from participation in or denied the benefits of a service, program, or activity of a public entity, or was otherwise discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination was by reason of disability. *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th 2001); 42 U.S.C. § 12132. A cause of action under § 504 of the Rehabilitation Act essentially parallels an ADA cause of action. *See Olmstead v. Zimring*, 527 U.S. 581, 589-90 (1999); *Duvall*, 260 F.3d at 1135. A qualifying "disability" is "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such

6

an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Major life activities is defined as "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 28 C.F.R. § 35.104. An individual is substantially limited in a major life activity if his limitation "is a severe restriction . . . compared to how unimpaired individuals normally" engage in that activity. *Walton v. United States Marshals Serv.*, 492 F.3d 998, 1007 (9th Cir. 2007).

Federal regulations require a public entity to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7).

Plaintiff has failed to allege any of the elements that are required to state a claim under the ADA or the RA. His allegations do not show that he has a disability, that he is otherwise qualified to participate in or receive the benefit of SQSP's programs, services or activities, and that he was excluded from these programs, services or activities on the basis of his disability.

Furthermore, the proper defendants to Plaintiff's disability discrimination claims are the public entities that allegedly denied him equal access to their programs: SQSP and the California Department of Corrections and Rehabilitation (CDCR). State correctional facilities are "public entities" within the meaning of the ADA. *See* 42 U.S.C. § 12131(1)(A) & (B); *Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998); *Armstrong v. Wilson*, 124 F.3d 1019, 1025 (9th Cir. 1997). State prisons that receive federal financial assistance are covered by the RA. *See Armstrong*, 124 F.3d at 1022-23.

In sum, assuming Plaintiff has a valid disability discrimination claim, he may assert the claim in an amended complaint against SQSP and the CDCR, but not against Kentfield or any individual Defendant. Therefore, on this basis also, Plaintiff's disability claim is dismissed against all Defendants.

## II. CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. Plaintiff states a cognizable claim for deliberate indifference to his serious medical

needs against Dr. Leighton, R.N. Peterson and Sgt. Boise.  This claim is dismissed against all other Defendants with leave to amend, as described above.

2. Plaintiff's ADA and RA claim is dismissed with leave to amend as described above.

3. If Plaintiff chooses to file an amended complaint, he must do so within <u>twenty-one days</u> from the date of this Order.  He must file the amended complaint on the Court's civil complaint form with the words "First Amended Complaint," on the upper right hand side of the cover page.  Plaintiff must use in the caption of the Amended Complaint the name of this case, *Cullen v. San Quentin Medical Service, et al.*, and the case number C 13-3871 KAW (PR)   Plaintiff is cautioned that he must include all allegations from his original complaint in his Amended Complaint.  If Plaintiff does not file an Amended Complaint within twenty-one days from the date of this Order, claims that are dismissed with leave to amend will be dismissed with prejudice and Plaintiff's claims against Defendants Dr. Leighton, R.N. Peterson and Sgt. Boise will proceed.

4. The Clerk of the Court shall mail <u>a Notice of Lawsuit and Request for Waiver of Service of Summons, two copies of the Waiver of Service of Summons, a copy of the complaint (docket no. 1) and all attachments thereto, a copy of this Order and a copy of the form "Consent or Declination to Magistrate Judge Jurisdiction" to SQSP Defendants Dr. Leighton, R.N. Peterson and Sgt. Boise.</u>  The Clerk shall also mail a copy of the complaint and a copy of this Order to the State Attorney General's Office in San Francisco, and a copy of this Order to Plaintiff.

5. Defendants are cautioned that Rule 4 of the Federal Rules of Civil Procedure require them to cooperate in saving unnecessary costs of service of the summons and complaint.  Pursuant to Rule 4, if Defendants, after being notified of this action and asked by the Court, on behalf of Plaintiff, to waive service of the summons, fail to do so, they will be required to bear the cost of such service unless good cause be shown for their failure to sign and return the waiver forms.  If service is waived, this action will proceed as if Defendants had been served on the date that the waiver is filed, except that pursuant to Rule 12(a)(1)(B), Defendants will not be required to serve and file an answer before <u>sixty</u> days from the date on which the request for waiver was sent.  (This allows a longer time to respond than would be required if formal service of summons is necessary.)

1    Defendants are advised to read the statement set forth at the foot of the waiver form that
2    more completely describes the duties of the parties with regard to waiver of service of the
3    summons.  If service is waived after the date provided in the Notice but before Defendants have
4    been personally served, the answer shall be due <u>sixty</u> days from the date on which the request for
5    waiver was sent or <u>twenty</u> days from the date the waiver form is filed, whichever is later.

6.    Defendants shall file their Consent or Declination to Magistrate Judge Jurisdiction on or before the date their answer is due.

7.    Defendants shall answer the complaint in accordance with the Federal Rules of Civil Procedure.  The following briefing schedule shall govern dispositive motions in this action:

   a.  No later than <u>thirty</u> days from the date their answer is due, Defendants shall file a motion for summary judgment or other dispositive motion.  If Defendants file a motion for summary judgment, it shall be supported by adequate factual documentation and shall conform in all respects to Federal Rule of Civil Procedure 56.  If Defendants are of the opinion that this case cannot be resolved by summary judgment, they shall so inform the Court prior to the date the summary judgment motion is due.  All papers filed with the Court shall be promptly served on Plaintiff.

   At the time of filing the motion for summary judgment or other dispositive motion, Defendants shall comply with the Ninth Circuit's decisions in *Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012), and *Stratton v. Buck*, 697 F.3d 1004 (9th Cir. 2012), and provide Plaintiff with notice of what is required of him to oppose a summary judgment motion or a motion to dismiss for failure to exhaust administrative remedies.

   b.  Plaintiff's opposition to the motion for summary judgment or other dispositive motion shall be filed with the Court and served on Defendants no later than <u>twenty-eight</u> days after the date on which Defendants' motion is filed.

   Before filing his opposition, Plaintiff is advised to read the notice that will be provided to him by Defendants when the motion is filed, and Rule 56 of the Federal Rules of Civil Procedure and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) (party opposing summary judgment must come forward with evidence showing triable issues of material fact on every essential

9

element of his claim). Plaintiff is cautioned that because he bears the burden of proving his allegations in this case, he must be prepared to produce evidence in support of those allegations when he files his opposition to Defendants' summary judgment motion. Such evidence may include sworn declarations from himself and other witnesses to the incident, and copies of documents authenticated by sworn declaration. Plaintiff will not be able to avoid summary judgment simply by repeating the allegations of his complaint.

   c. Defendants shall file a reply brief no later than fourteen days after the date Plaintiff's opposition is filed.

   d. The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the Court so orders at a later date.

8. Discovery may be taken in this action in accordance with the Federal Rules of Civil Procedure. Leave of the Court pursuant to Rule 30(a)(2) is hereby granted to Defendants to depose Plaintiff and any other necessary witnesses confined in prison.

9. All communications by Plaintiff with the Court must be served on Defendants, or Defendants' counsel once counsel has been designated, by mailing a true copy of the document to Defendants or Defendants' counsel.

10. It is Plaintiff's responsibility to prosecute this case. He must keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion.

11. Extensions of time are not favored, though reasonable extensions will be granted. Any motion for an extension of time must be filed no later than fourteen days prior to the deadline sought to be extended.

**IT IS SO ORDERED.**

Dated: 10/23/13

_____
KANDIS A. WESTMORE
UNITED STATES MAGISTRATE JUDGE